# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **MEHARRY MEDICAL COLLEGE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:24-cv-01258** |
| | ) | |
| **NATIONAL LABOR RELATIONS** | ) | |
| **BOARD, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

This lawsuit is one of several recent cases filed in district courts across the country seeking to enjoin a National Labor Relations Board ("NLRB") proceeding because its Board members and Administrative Law Judges ("ALJs") are unconstitutionally protected from the President's plenary removal powers. Now before the Court is Meharry Medical College's ("Meharry") Motion for Preliminary Injunction (Doc. No. 2), which is ripe for review (<u>see</u> Doc. Nos. 3, 41, 46). The parties have not indicated that there are any material facts in dispute that would require the Court to hold an evidentiary hearing before ruling on Meharry's motion. <u>See</u> <u>Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.</u>, 511 F.3d 535, 553 (6th Cir. 2007). For the following reasons, Meharry's motion will be denied.

## I. <u>BACKGROUND</u>

Before addressing Meharry's motion on the merits, the Court finds it helpful to provide an overview of the rules and statutory framework involved here.

The NLRB enforces the National Labor Relations Act ("NLRA"), which generally prohibits employers from engaging in certain "unfair labor practices." <u>Starbucks Corp. v. McKinney</u>, 602 U.S. 339, 342 (2024) (citing 29 U.S.C. §§ 158(a), (b)). The NLRB has a four-step

process to evaluate and remedy alleged unfair labor practices. First, a charge is filed with the NLRB alleging that an employer or union engaged in an unfair labor practice. Id. at 343 (citation omitted). Second, a regional Director investigates the charge and issues a formal administrative complaint against the offending party if the charge appears to have merit. Id. Third, an ALJ adjudicates the complaint in an administrative hearing. Id. "Finally, if the unfair labor practices alleged in the complaint are sustained [by the ALJ], the Board can seek enforcement of the order, and any aggrieved party can seek review, in a federal court of appeals." Id. at 1582 (Jackson J., concurring in part, dissenting in part, and concurring in the judgment).

NLRB Board members are "appointed by the President by and with the advice and consent of the Senate," and NLRB ALJs are appointed by the NLRB Board members. 29 U.S.C. §§ 153–54. Once appointed, an NLRB Board member "may be removed by the President" only "for neglect of duty or malfeasance in office, but for no other cause." Id. An ALJ may be removed only if: (1) the Board brings an action to remove the ALJ; *and* (2) the Merit Systems Protection Board, an independent federal agency, determines that there is "good cause" for the removal. See 5 U.S.C. § 7521(a); Kerwin v. Trinity Health Grand Haven Hosp., 2024 WL 4594709, at *3 (W.D. Mich. Oct. 25, 2024) (citation omitted).

With this background, the Court now turns to the instant case. Meharry is a private university in Nashville, Tennessee, that historically is recognized as "being the first medical school for African Americans in the South." (Doc. No. 1 ¶ 8). Meharry offers multiple residency programs within its School of Medicine, including a Psychiatry Residency Program (the "Program"). (Id. ¶ 16). Dr. Joshua Anthony is a former resident of the Program who, Meharry alleges, was not allowed to continue in the Program because he did not meet certain mandatory requirements. (Id.). Dr. Anthony responded by filing multiple unfair labor practice charges against

Meharry alleging that it violated the NLRA. (Id. ¶¶ 18–21). On September 16, 2024, the NLRB Regional Director for Region 10 consolidated the cases, issued a consolidated complaint, and noticed an administrative hearing before an ALJ on January 28, 2025. (Id. ¶ 22). Meharry alleges that the remedies sought in the consolidated complaint include requiring Meharry to reinstate Dr. Anthony's alumni email address and to make him whole for any foreseeable pecuniary harm he incurred as a result of Meharry's conduct. (Doc. No. 1 ¶ 23). The ALJ hearing has been reset for May 13, 2025.

On October 21, 2024, Meharry filed this lawsuit against the NLRB; Jennifer Abruzzo in her official capacity as the General Counsel of the NLRB; Lauren McFerran, Marvin Kaplan, Gwynne Wilcox, and David Prouty in their official capacities as Board Members of the NLRB; and John Doe in his or her official capacity as an Administrative Law Judge of the NLRB.[1] (See Doc. No. 1). Meharry alleges that the procedures for removing NLRB Board members and NLRB ALJs are unconstitutional because they violate the President's removal powers. (Id. ¶¶ ). Meharry also alleges that the NLRB's requested relief violates its Seventh Amendment right to a jury trial. (Id. ¶¶ 54–71). To remedy these alleged constitutional violations, Meharry seeks a declaratory judgment finding that the NLRB's ongoing administrative proceedings are unconstitutional and invalid. (Id. at Prayer for Relief).

As relevant here, Meharry seeks a preliminary injunction to halt the NLRB proceeding, including the ALJ's May 13, 2025 administrative hearing. (Doc. No. 2). The NLRB opposes this request. (Doc. No. 41).

---

[1] The Court notes that, as of the date of this Memorandum Opinion, William Cowen is the Acting General Counsel of the NLRB, and Kaplan and Prouty are the only Board Members of the NLRB.

## II.    **PRELIMINARY INJUNCTION**

"The purpose of a preliminary injunction [under Federal Rule of Civil Procedure 65] is to preserve the status quo until a trial on the merits." S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co., 860 F.3d 844, 848 (6th Cir. 2017) (citing Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981)). "Because they necessarily happen before the parties have had an opportunity to fully develop the record, the movant 'is not required to prove his case in full at a preliminary injunction hearing.'" Id. at 848–49 (citing Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp., 511 F.3d 535, 542 (6th Cir. 2007)). A preliminary injunction is an extraordinary and drastic remedy, and should be granted only upon a clear showing that the plaintiff is entitled to such relief. Id. at 849 (citations omitted).

In determining whether to issue a preliminary injunction, the Court considers the following four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." Id. (quoting Bays v. City of Fairborn, 668 F.3d 814, 818–19 (6th Cir. 2012)). These factors are not prerequisites but are factors that are to be balanced against each other. Id.

For the reasons stated below, the Court does not find that the balance of these factors weigh in favor of granting Meharry's request for a preliminary injunction.

### A.    Likelihood of Success on the Merits

#### 1.    Removal Restrictions for NLRB Board Members and ALJs

The Court first addresses whether Meharry is likely to succeed on his claim that the removal protections for Board members and ALJs violate Article II of the Constitution. Article II of "[t]he Constitution gives the President authority 'to remove those who assist him in carrying

4

out his duties.'" <u>Rieth-Riley Constr. Co., Inc. v. NLRB</u>, 114 F.4th 519, 529 (6th Cir. 2024) (quoting <u>Free Enter. Fund v. Public Co. Acct. Oversight Bd.</u>, 561 U.S. 477, 513–14 (2010)).  The President's plenary power to remove executive officers "is the rule, not the exception."  <u>Calcutt v. FDIC</u>, 37 F.4th 293, 313 (6th Cir. 2022).   Nevertheless, the Supreme Court has recognized two limited exceptions to this rule that allow Congress to prevent the President from removing certain executive officers without cause:  (i) the "board member exception" and (ii) the "inferior officer exception."  <u>See</u> <u>Overstreet v. Lucid USA Inc.</u>, 2024 WL 5200484, at *5 (D. Ariz. Dec. 23, 2024) (citing <u>Seila Law LLC v. CFPB</u>, 591 U.S. 197, 203–04 (2020)).  The board member exception (often referred to as the <u>Humphrey's Executor</u> exception) permits "Congress to give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." <u>See</u> <u>Seila</u>, 591 U.S. at 215–18 (citing <u>Humphrey's Executor v. United States</u>, 295 U.S. 602 (1935)). And the inferior officer exception permits for-cause removal protections "for inferior officers with limited duties and no policymaking or administrative authority."  <u>Id.</u> at 218.  The relevant inquiry, then, is whether these exceptions apply to Board members or ALJs.  <u>See</u> <u>Kerwin</u>, 2024 WL 4594709, at *7.

Starting with the NLRB Board members, the parties focus on whether the Board's removal protections fall within the <u>Humphrey's Executor</u> exception.  In <u>Humphrey's Executor</u>, the Supreme "Court upheld a statute that protected the Commissioners of the [Federal Trade Commission ("FTC")] from removal except for inefficiency, neglect of duty, or malfeasance in office."  <u>Seila</u>, 591 U.S. at 215 (citing <u>Humphrey's Executor</u>, 295 U.S. at 620).  The Court recognized that the President's power to remove "purely executive officers" did not extend to "officers that closely resemble[] the FTC Commissioners" because they exercise "no part of the executive power."  <u>Id.</u>

at 215–17 (citing Humphrey's Executor, 295 U.S. at 628, 632). "In reaching that conclusion, the Court stressed that Congress's ability to impose such removal restrictions 'will depend on the character of the office.'" Id. at 215 (quoting Humphrey's Executor, 295 U.S. at 631).

The NLRB has the same "organizational features" as the FTC for purposes of the Humphrey's Executor exception. The NLRB and FTC are both "multi-member independent expert agencies," and "[t]he Board members, similar to the [FTC] Commissioners, are balanced along partisan lines, serve staggered multi-year terms, and exercise quasi-legislative and quasi-judicial power." Yapp USA Automotive Sys., Inc. v. NLRB, 748 F. Supp. 3d 497, 506 (E.D. Mich. 2024); see also Seila, 591 U.S. at 216. Indeed, there can be no reasonable dispute that "[t]he Board is a paradigmatic example of a multimember group of experts who lead an independent federal office." Wilcox v. Trump, --- F. Supp. 3d ---, 2025 WL 720914, at *6 (D.D.C. Mar. 6, 2025); see also Yapp, 748 F. Supp. 3d at 508 (finding that "the NLRB is a multi-member independent, expert agency").

Meharry argues that the Humphrey's Executor exception should not apply because NLRB Board members "wield substantial executive power in administering and enforcing the NLRA." (Doc. No. 3 at 14–17). Specifically, Meharry contends that the members have the right to exercise prosecutorial power in federal district courts; the right to determine appropriateness of units for the purpose of collective bargaining; and the ability to oversee and direct representation elections, issue opinions in unfair labor practice charges, and resolve subpoena issues. (Doc. No. 1 ¶ 43). It is true that the Supreme Court in Humphrey's Executor upheld for-cause removal protections for FTC Commissioners because "the Court viewed the FTC (as it existed in 1935) as exercising 'no part of the executive power.'" Seila, 591 U.S. at 215 (quoting Humphrey's Executor, 295 U.S. at 628). However, the Supreme Court has since clarified that the Humphrey's Executor exception still applies to "officers of an expert, non-partisan agency" (like the FTC) even if those officers

exercise "some arguably 'executive' functions." Leachco, Inc. v. Consumer Prod. Safety Comm'n, 103 F.4th 748, 762 (10th Cir. 2024) (citing Morrison v. Olson, 487 U.S. 654 (1988)); Seila, 591 U.S. at 239 (Thomas, J., concurring) (recognizing that Humphrey's Executor still applies to "multimember expert agencies that *do not wield substantial executive power*").

Ultimately, this Court joins the long list of district court cases finding that the Humphrey's Executor exception applies to NLRB Board members because they "closely resemble[] the FTC Commissioners." See Seila, 591 U.S. at 217; see also, e.g., Yapp, 748 F. Supp. 3d at 508 ("Humphrey's Executor remains binding and continues to apply to traditional independent agencies led by a multimember board, including the NLRB."); United States v. SunSetter Prods. LP, 2024 WL 1116062, at *4 (D. Mass. Mar. 14, 2024) (same); Kerwin, 2024 WL 4594709, at *7 (finding "Respondent's contention that the removal protections for NLRB Board members would be a significant expansion of the Humphrey's Executor standard unfounded). "Regardless whether the NLRB exercises 'substantial executive power,' 'executive power,' or 'quasi-legislative and quasi-judicial power,' the NLRB does not sufficiently differ from the FTC to warrant a departure from Humphrey's Executor." Wilcox, 2025 WL 720914, at *9 n.11. Unless the Supreme Court or the Sixth Circuit see things differently in the future,[2] it is unlikely that Meharry will succeed on its claim that the for-cause removal protections for NLRB Board members are unconstitutional.

Next, with respect to the NLRB ALJs, the parties focus on whether the inferior officer exception applies. NLRB "ALJs are inferior officers." Yapp, 748 F. Supp. 3d at 508 (citing Lucia v. SEC, 585 U.S. 237, 244 n.3); Kerwin, 2024 WL 4594709, at *6. "Congress can compel for-cause removal protections for inferior officers who have limited duties and no policymaking or

---

[2] Nearly identical issues were raised in Yapp, which currently is on appeal in the Sixth Circuit and has been set for oral argument in June 2025. See Yapp USA Automotive Sys. Inc. v. NLRB, No. 24-1754 (6th Cir. 2024).

administrative authority that could 'impede the President's ability to perform his constitutional duty.'" Rieth-Riley, 114 F.4th at 529 (quoting Morrison, 487 U.S. at 691). In Calcutt, the Sixth Circuit upheld dual-layer removal protections for Federal Deposit Insurance Corporation ("FDIC") ALJs because the inferior officer "exception for ALJs centers on their status as adjudicatory officials that issue non-final recommendations to an agency, and not on how many levels of removal protections they enjoy." Calcutt, 37 F.4th at 219, rev'd on other grounds, 598 U.S. 623 (2023). Although Calcutt specifically involved the *FDIC*'s structure, the Sixth Circuit expressed "doubt[s]" that those subject to similar agency enforcement proceedings "could establish a constitutional violation from the ALJ removal restrictions" if the "ALJs perform adjudicatory functions," file recommendations "subject to review" by the agency's board members, and do not hinder the President's "control over his subordinates." Id. at 319. Calcutt remains binding Sixth Circuit precedent on this issue, and the Court agrees that the "NLRB ALJs fit comfortably within that description." Yapp, 748 F. Supp. 3d at 509 (quoting Calcutt, 37 F.4th at 320).

In arguing that the inferior officer exception does not apply, Meharry relies heavily on Fifth Circuit case law holding that ALJs are unconstitutionally insulated from removal by the President. (Doc. No. 3 at 12–13). In Jarkesy v. SEC, a split Fifth Circuit panel found that ALJs for the Securities and Exchange Commission ("SEC") were not entitled to for-cause removal protections under the inferior officer exception because they "exercise considerable power over administrative case records." 34 F.4th 446, 463–64 (5th Cir. 2022). Meharry contends that there is no meaningful difference between SEC ALJs and NLRB ALJs, and therefore this Court should apply Jarkesy here and find that the for-cause removal protections for NLRB ALJs are unconstitutional. (Doc. No. 3 at 12–13). "But this Court is bound by the Sixth Circuit's ruling in Calcutt, which it reads as not invalidating ALJ removal protections like those applicable to NLRB ALJs." Yapp, 748 F. Supp.

3d 497; see also VHS Acquisition Subsidiary No. 7 v. NLRB, 759 F. Supp. 3d 88, 99 (D.D.C. 2024) (recognizing circuit split between the Fifth and Sixth Circuits on this issue). Thus, Meharry is not likely to succeed on his challenge to the ALJ removal protections.

In any event, the Sixth Circuit recently held that district courts do not need to resolve these same "complicated and consequential" "separation of powers questions" at the preliminary injunction stage. Yapp USA Automotive Sys. Inc. v. NLRB, 2024 WL 4489598, at *2 (6th Cir. Oct. 13, 2024) (denying plaintiff's motion to enjoin the NLRB from conducting administrative proceedings against it). That is because "[e]ven if the removal protections of the NLRB Board members and ALJs are unconstitutional," Meharry "is not automatically entitled to an injunction" unless it can make two additional showings. Id. (citing Calcutt, 37 F.4th at 310) (internal quotation marks omitted). First, Meharry, as the "party challenging the constitutionality of [the NLRB's] removal protection scheme," must show that the *removal restrictions* caused it harm; it "cannot simply show that the [*NLRB proceeding* itself] caused—or will cause—harm." Id. Second, Meharry would need to make a "concrete showing . . . that the removal restriction[s] *specifically* impacted" the NLRB's proceeding without relying on "'vague, generalized allegations' of harm." Id. (quoting Collins v. Yellen, 594 U.S. 220, 259 (2021)). In other words, Meharry "would need to make a showing that because the NLRB members and ALJs are unconstitutionally shielded from removal by the President, this actually impacted, or will impact, the administrative proceedings against it." Yapp, 748 F. Supp. 3d at 511. "[M]erely being subjected to a hearing before an ALJ (or Board members) protected by unconstitutional removal protections is not enough." Id.; see also Leachco, 103 F.4th at 756 (citing Collins, 594 U.S. at 259–60).

Critically, Meharry has not demonstrated "how the removal protections for the NLRB Board members or the NLRB ALJs would *specifically* impact the upcoming proceeding." Yapp,

2024 WL 4489598, at *3 (citation, internal quotation marks, and alterations omitted). For example, it has not demonstrated that "but for the allegedly unconstitutional removal provisions, the [two] current NLRB Board members or the NLRB ALJ [assigned to this case] would have been removed, the NLRB proceedings against it would not be occurring, or the proceedings would be different in any way." Id. (quoting Leachco, 103 F.4th at 757) (internal alterations omitted). The Court takes notice that the President recently removed Gwynne Wilcox from her position as an NLRB Board member (see Doc. No. 56 at 2), the District Court for the District of Columbia ordered her reinstatement, see Wilcox, 2025 WL 720914, and the Supreme Court has stayed her reinstatement on an emergency basis until it can weigh in on this issue. But even if Wilcox eventually is reinstated to her position as a Board member, it is unclear how Meharry could suffer an injury from her reinstatement unless it appeals an adverse ALJ decision to the Board itself, especially when there is no indication that the other two Board members (or the President) ever attempted to remove ALJ Eleanor Laws—the ALJ assigned to this case. Without some indication that Meharry will be specifically harmed by an NLRB Board member or ALJ who the President unsuccessfully tried to remove, the Court cannot find that Meharry will suffer any causal harm from these removal protections.

2.      Seventh Amendment

The crux of Meharry's Seventh Amendment claim is that the NLRA does not authorize legal relief, and therefore the NLRB is violating Meharry's right to a jury trial by seeking remedies in the administrative proceeding that "include requiring Meharry to reinstate [Dr.] Anthony's alumni email address and to [m]ake [him] whole for any direct or foreseeable pecuniary harm he incurred as a result of [Meharry's] unlawful conduct." (Doc. No. 1 ¶¶ 23, 58). Meharry is unlikely to succeed on this claim for the simple fact "that the Seventh Amendment right to a jury trial does not attach to NLRB proceedings." Yapp, 748 F. Supp. 3d at 514 (citing NLRB v. Jones & Laughlin

10

Steel Corp., 301 U.S. 1, 33 (1937)). However, given the Court's analysis below on irreparable harm, which weighs decidedly against granting a preliminary injunction, the Court need not list additional reasons for why Meharry is unlikely to succeed on this claim.

B.    Irreparable Harm

The Court next finds that Meharry has not demonstrated the requisite irreparable harm needed for a preliminary injunction.

As to its removal claims, Meharry argues that "being subjected to unconstitutional agency authority" constitutes irreparable harm that is "impossible to remedy once the proceeding is over." (Doc. No. 3 at 21–22) (citing Axon Enter., Inc. v. FTC, 598 U.S. 175, 191 (2023)). This alleged harm may constitute a "here and now injury" for purposes of subject matter jurisdiction (see supra Section III), but it does not suffice as irreparable harm for an injunction. The Supreme Court and Sixth Circuit's causal-harm requirement also applies to irreparable harm, meaning Meharry cannot establish irreparable harm without demonstrating that the allegedly unconstitutional removal protections for Board members or ALJs "specifically impacted" (or made a difference in) the case. Yapp, 2024 WL 4489598, at *3 (holding that plaintiff's "failure to satisfy the causal harm requirement could mean that it is not likely to succeed on the merits or that [it] has not shown that it will suffer irreparable harm"); Collins, 594 U.S. at 260. For the reasons mentioned above, Meharry fails to make that showing here. See Yapp, 748 F. Supp. 3d 497 (citing Leachco, 103 F.4th at 753).

The Court further finds that Meharry has not demonstrated irreparable harm on its Seventh Amendment claim. The Sixth Circuit has held that "[a]n NLRB remedial order is not self-executing, and the respondent can violate it with impunity until a court of appeals issues an order enforcing it." Mitchellance, Inc. v. NLRB, 90 F.3d 1150, 1159 (6th Cir. 1996). This means that Meharry will have an opportunity to challenge an adverse remedial award in the Sixth Circuit or

11

D.C. Circuit, where it can contest the constitutionality of the damages being sought by the NLRB. See 29 U.S.C. §§ 160(e), (f). Several other district courts cases have rejected Meharry's theory of irreparable harm for this exact reason. See Yapp, 748 F. Supp. 3d at 517; Ares Collective Grp. LLC v. NLRB, 2024 WL 4581436, at *2 (D. Ariz. Oct. 25, 2024) ("nothing about the NLRB proceedings will permanently deprive Plaintiffs of their Seventh Amendment right" because, "as detailed in the NLRA, Plaintiffs can seek review of the NLRB's decision in the court of appeals"); HonorHealth v. NLRB, 2024 WL 4769772, at *4 (D. Ariz. Nov. 13, 2024) (same); Amazon.com Servs. LLC v. NLRB, 2024 WL 4977179, at *6 (W.D. Tex. Sept. 29, 2024) (same). Although the Court is not aware of any Supreme Court or binding Sixth Circuit case on this issue (and the parties do not cite any), the Court agrees with the reasoning in these cases because the potential for appellate review means Meharry's alleged harm, if any, is not irreparable.

This factor, too, weighs against a preliminary injunction.

C.    Balance of Equities and Public Interest

Where, as here, the government is the party opposing injunctive relief, "the third and fourth elements for a preliminary injunction merge, and the Court must balance any harm with the public interest." D.H. by A.H. v. Williamson Cnty. Bd. of Educ., 638 F. Supp. 3d 821, 837 (M.D. Tenn. 2022) (citing Nken v. Holder, 556 U.S. 418, 435 (2009)). With respect to these factors, Meharry merely reiterates that it is in the public's best interest to enjoin the NLRB proceedings so that Meharry will not be forced to defend itself in an unconstitutional proceeding. (Doc. No. 3 at 22). The NLRB responds that depriving an employee (like Dr. Anthony) "of the only avenue to vindicate their NLRA rights cannot serve the public interest, especially when Meharry may obtain an adequate remedy in a court of appeals if the Board ultimately issues an adverse decision." (Doc. No. 41 at 25).

The Court finds that these factors are neutral at best. What matters more is that Meharry failed to show a strong likelihood of success on the merits of its claims or irreparable harm, which minimizes the public interest in granting a preliminary injunction under these circumstances.[3] See D.H. by A.H., 638 F. Supp. 3d at 837; see also See Higuchi Int'l Corp. v. Autoliv ASP, Inc., 103 F.4th 400, 409 (6th Cir. 2024) (suggesting that a district court commits reversible error by issuing a preliminary injunction where there is no likelihood of success on the merits); Patio Enclosures, Inc. v. Herbst, 39 F. App'x 964, 967 (6th Cir. 2002) (holding that "the demonstration of some irreparable injury is a *sine qua non* for issuance of an injunction").

## III.    SUBJECT MATTER JURISDICTION

The Court would be remiss not to mention subject matter jurisdiction, which generally is a threshold issue that the Court is required to resolve on motion or on its own. Indeed, the Court's "independent obligation to determine whether subject-matter jurisdiction exists" is what prompted the Court to enter an Order on March 21, 2025 (Doc. No. 54), stating that it had concerns about subject matter jurisdiction in this case. See Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006). The parties have since filed supplemental briefs regarding whether the Court may exercise jurisdiction over each of Meharry's three claims: (1) that the tenure protections enjoyed by Board members are unconstitutional; (2) that the tenure protections enjoyed by ALJs are unconstitutional; and (3) that the unfair labor practice hearing violates the Seventh Amendment. (Id. at 1–2; see also Doc. Nos. 55–57).

The parties submit that the Court has subject matter jurisdiction over Meharry's constitutional challenges to the Board member and ALJ removal protections, but they disagree about whether the Court has jurisdiction over Meharry's claim that the damages being sought by

---

[3] Given the Court's holding here, it need not address the NLRB's alternative arguments regarding severance or the Norris-LaGuardia Act. (See Doc. No. 41 at 6, 10–11).

the NLRB deprive it of its Seventh Amendment right to a jury trial. The Court likely has subject matter jurisdiction over the removal-restriction claims because Meharry has alleged what the Supreme Court refers to as a "here-and-now injury" arising from allegedly unconstitutional removal restrictions. See Axon, 598 U.S. at 191; Seila Law LLC v. CFPB, 591 U.S. 197, 212 (2020). The Seventh Amendment issue is less clear, however, because at least two other courts in this circuit have suggested that Congress intended the NLRA to limit district court jurisdiction over the relief being sought by the NLRB in this case. See Yapp, 748 F. Supp. 3d at 512; see also Nextar Media, Inc. Grp. v. NLRB, 746 F. Supp. 3d 464, 469–473 (N.D. Ohio).

The Court will resolve these jurisdictional issues in due course before addressing the merits of the case or granting Meharry any affirmative relief. See Arbaugh, 546 U.S. at 514. But the Court need not resolve these issues right now because the Court has decided to deny rather than grant Meharry's motion for a preliminary injunction. "[A] district court may make various other kinds of non-merits based decisions," such as denying preliminary injunctive relief, "before addressing a colorable challenge to subject-matter jurisdiction." Memphis A. Phillip Randolph Inst. v. Hargett, 478 F. Supp. 699, 710 n.13 (M.D. Tenn. Aug. 11, 2020). In doing so here, the Court adopts the following reasoning from Judge Eli Richardson's published opinion in Hargett:

> [Defendants argue] that the Court lacks subject-matter jurisdiction (because, Defendants claim, all Plaintiffs lack standing as to all claims). . . . This may understandably raise in observers' minds the question of whether, at this juncture, the Court should even be deciding (in part) a motion for a preliminary injunction, prior to resolving the issue of whether it has subject-matter jurisdiction. The short answer is that the Court may do so, provided that the Court's decision is to deny rather than grant preliminary injunctive relief. The Court realizes that it cannot *grant* a preliminary injunction prior to resolving a colorable challenge to subject-matter jurisdiction. See, e.g., Vis Vires Grp., Inc. v. Endonovo Therapeutics, Inc., 149 F. Supp. 3d 376, 384 (E.D.N.Y. 2016) (collecting authorities). . . . But a *refusal* to exercise affirmative judicial power is another matter entirely; if the court's decision is to deny a request for a preliminary injunction, the concerns about unauthorized use of judicial power are not present in

the same way. ***For this reason, it appears that the Sixth Circuit permits a district court to first deny a motion for a preliminary injunction and then resolve a challenge to subject-matter jurisdiction***. See Freeman v. Helldoerfer, 208 F.3d 213 (6th Cir. 2000) (affirming district court's denial, in a case removed from state court, of a motion for preliminary injunction prior to the court's remand to state court based on the district court's lack of subject matter jurisdiction).

Id. (emphases added in bold). Accordingly, "the Court does not hesitate to issue this order denying the Motion . . . , especially since the denial is based not on the Court's perception of the merits of [Meharry's] claim but rather on the absence of irreparable injury." See id.

## IV.   **CONCLUSION**

For the foregoing reasons, the Court will deny Meharry's Motion for a Preliminary Injunction (Doc. No. 2) because it has not clearly shown the need for injunctive relief.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE